## Augustus J. Rudderow, Trustee, v. Phila., Appellant.

*Constitution—Road law—Change of grade—Damages.*

Under art. 6, § 8, of the constitution, which provides for just compensation for property taken for public works, an owner of property on a street is entitled to damages for a change of grade of the street from its original level rendered necessary in order to construct sewers to abate a nuisance prejudicial to the health of the neighborhood.

A municipality is not entitled to set off, against a special damage done to a particular property, a subsequent increase of value common to the entire neighborhood in which the particular property is situated.

Argued Jan. 11, 1895.   Appeal, No. 378, Jan. T., 1894, by defendant, from judgment of C. P. No. 2, Phila. Co., March T., 1892, No. 529, for plaintiff on report of referee.   Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ.   Affirmed.

Appeal from report of viewers assessing land damages.

By agreement of the parties the case was referred to Richard C. Dale, Esq., as referee, who reported as follows:

"1. In 1845 Benjamin S. Janney became seized of a tract of land in the county of Philadelphia, of which the two lots for which damages (caused by change of grade) are claimed, were part.

"2. In the year 1847 the district of Richmond was incorporated, including within its limits the lots in question.

"3. In the year 1850 the said Benjamin S. Janney sold lots described as on Janney street, running through to Weikel street, which is the Weikel street in question.

"4. Since 1850 to the present day said Weikel street has existed as a street laid out by Benjamin S. Janney, and a public highway, and lots have been sold as bounded thereby.

"5. No confirmed grade of Weikel street had been established prior to that under which the grading complained of was done, and no street pavement had been made thereon or other construction effected by the public authorities prior to the grading which is the present cause of action.

"6. No improvements have at any time been placed upon the premises of plaintiff.

VOL. CLXVI—16

"7. In 1847, P. L. 389, an act was approved March 15, to incorporate the Gunner's Run Improvement Co., authorizing said company to construct a canal one hundred feet wide, commencing at the northwest side of Queen street, now Richmond street, in the district of Kensington, and to terminate at a point at or near where the Phila. & Reading Railroad crosses Gunner's run.

"8. A supplement to said act was passed March 10, 1848, authorizing said company to. construct said canal to the river Delaware by the best practical route in the district of Richmond.

"9. Said canal was never constructed north of Huntingdon street, although ditched further north, and the part south of the said street has been long since abandoned by the company.

"10. The following ordinance, applying to the district in question, was duly passed Feb. 25, 1884:

. "'That the department of surveys be, and they are hereby authorized to make a re-survey of the streets in the Sixth Survey District and to secure the same by suitable landmarks, and to revise the lines and grades thereof.'

"11. On Sept. 2, 1886, the following action was held by the board of health:

'. "'The special committee to which was referred a complaint in regard to the condition of Gunner's run, made a report in connection thereto, setting forth its filthy condition, and that there can be no doubt the high mortality for which that section of the city is noted, is due, in a large measure, to this shallow and open latrine, as it may be called, the poisonous emanations from which escape unhindered into the surrounding air.   The nuisance seems to be one so prejudicial to the public health that the committee recommends the board to call the special attention of the city councils to it, by submitting to councils a copy of this report, with the suggestion that a brick culvert take the place of the open stream, or if that is impracticable at this time, that the canal be dredged of its disgusting contents.'   Signed by R. A. Cleeman, M. A. Davis, H. G. Sickel, committee.   Resolution adopted.

"The subject-matter of this resolution was by councils referred to the board of surveyors, who appointed a committee of their number to examine the locality.

"12. On Jan. 11, and June 27, 1887, a committee of coun-

cils stated the condition in reports to the select and common councils, of which a copy, together with ordinances thereafter passed, is attached hereto as Exhibit 'A.'

"13. The following ordinance, one of the above referred to, was duly passed Feb. 25, 1887:

"'That the department of surveys be, and is hereby authorized to strike from the city plan, Aramingo canal, from Huntington street to Frankford creek, and in lieu thereof to substitute a street of the same width, and to revise the lines and grades of all streets in the vicinity that may be affected by such change.'

"14. That in pursuance of said ordinances, the board of surveys struck Aramingo canal off the plans, and revised and changed the said lines and grades by certain plans which were confirmed by said board of surveys, on Dec. 2, 1889, and on other dates at or about the same time.

"15. All the plans thus confirmed, and particularly the plan which includes Weikel street, prescribed grades upon streets crossing the former line of Aramingo canal, of such a nature as to afford continuous slopes for the sewage system in its course from the upper side of Gunner's run and Aramingo canal to the Delaware river. The slope of the surface of Westmoreland street was also continuous from the upper side of former Aramingo canal, all the way to the river. Southwest of Westmoreland street the transverse streets are not continuous in the slope of their surface to the river. Below Aramingo canal they show a slight hollow running parallel with its line; below this hollow they rise to a summit; beyond which the slope continues to the river. The sewers on these streets preserve their continuous slope to the river by plunging some ten feet or more below the street surface after passing the hollow referred to. The grade of the sewers is the least practicable to admit of the necessary height above the canal to enable them to discharge at low tide.

"16. All of these plans had place in a general scheme of grade regulation, then adopted and since pursued, calculated to eliminate from the system of street levels in the locality, the water shed and general depression of Gunner's run and Aramingo canal.

"17. By said revised plan, the lines and grades of the streets in said portion of the sixth survey district, in which the property

in question is situate, have been changed and are raised and made higher than the grades which had been theretofore established, or existed naturally upon such streets where there was no confirmed plan.

" 18. By an ordinance approved April 7, 1890, the director of the department of public works was authorized and directed, inter alia, to grade Weikel street, from Allegheny avenue to Clearfield street. Ordinances, 1890, page 112.

" 19. Pursuant to said ordinance of April 7, 1890, said Weikel street was graded from Allegheny avenue to Clearfield street.

" 20. The depreciation in market value of the plaintiff's property, consequent upon the change of grade, was $1,221.

" 21. The territory adjacent to and within the water shed of Gunner's run, including the plaintiff's lots and an area of several square miles, lies low, and with the growth of the city Gunner's run became a nuisance prejudicial to the health of that portion of the city.

" 22. The nuisance referred to as existing in the locality whereof the street grades were thus established was occasioned by the sluggish nature of Gunner's run and of the same stream in its passage through the canal, by the depression of the entire locality, and by the general confluence of all drainage along streets and over ground surface into the stream.

" 23. The object of the general re-arrangement of grades referred to, was the abatement of this nuisance by such alteration of street slopes as to make them cease carrying fluid and other refuse where the presence of such discharge was constantly stimulating the noxious influences.

" 24. The foregoing findings of fact were accepted as correct by counsel for both plaintiff and defendant. Counsel for the city also asked the referee to make the following finding :

" ' According to the weight of evidence, the action taken by the municipal authorities was that directly adapted to relieve the evil,—was the expedient towards such end least injurious to private property, and in fact, the only practicable course for re-adjusting slopes in general so as to abate the nuisance in question.' ·

" 25. The referee cannot affirm this proposition in the language in which it is framed, but does find that the municipal action taken was calculated to abate the nuisance, and was

adopted for that purpose as shown by the report of the committee of councils hereto appended.

" The counsel for the city asked the referee to affirm the following proposition of law :

" ' [The effect of art. 6, sec. 8 of the state constitution is merely to withdraw the prerogative immunity of the commonwealth and its agencies against redress for injuries recognized independently of that provision, but irremediable save under it. Its terms cannot be held to impose a liability for such a measure as that here in question if coming under the police power.]' [1]

" The referee declines to affirm this proposition so far as he is asked to apply it to the circumstances of this case.

" Upon the foregoing statements of fact, which are not the subject of dispute, the city contended that it was not liable for the injury done to plaintiff's lots, because the change of grade was a step in a great public improvement designed by the municipal authorities to abate a nuisance prejudicial to the health of the neighborhood, and the removal of which would tend eventually to enhance the value of all the property in the district affected by the change.

" The rights of property owners to damages for injury to property consequent upon a change of grade are derived from article 6, section 8 of the constitution, which provides : ' Municipal and other corporations and individuals invested with the privilege of taking private property for public use, shall make just compensation for property taken, injured or destroyed by the construction and enlargement of the works, highways or improvements.'

" This constitutional provision was adopted to relieve property owners from the hardship which the court sought, but was unable to allow compensation for in O'Connor v. Pittsburg, 18 Pa. St. 187, where Mr. Chief Justice GIBSON said : ' We have had this cause re-argued in order to discover, if possible, some way to relieve the plaintiff consistently with law, but I grieve to say we have discovered none.' ' The modification of the remedy would be for the legislature, which can turn compensation for a permanent detriment into the price of a prospective license, but to obtain complete justice, every damage to private property ought to be compensated by the state

or corporation that occasioned it, and a general statutory remedy ought to be provided to assess the value.'

" The duty of the court to afford the protection thus given by the constitution to the rights of property holders is thus recognized by Mr. Chief Justice STERRETT, in O'Brien v. Phila., 150 Pa. St. 589; a case where the city sought to escape responsibility for damages to a house built in conformity with the then existing grade of an old and open public highway, and where the grade was subsequently changed to conform to a plan confirmed after the building of the house, the plan being the first official regulation of the grade of the highway.

" The Court said : 'If any regard is to be had for the constitutional mandate that " municipal and other corporations . . . . shall make just compensation for property taken, injured or destroyed by the construction or enlargement of their works, highways or improvements," we are at a loss to see how the learned judge could do otherwise than decide the reserved question as he did. Nobody conversant with the history of the constitutional provision above quoted can entertain any doubt that it was intended to provide, inter alia, for the class of cases of which O'Connor v. Pittsburg, 18 Pa. 187, is a conspicuous example. It has uniformly been so regarded from the date of its adoption until the present time. It is a fact, conclusively established by the verdict, that, as a direct consequence of the elevation of grade immediately in front of plaintiff's property, its market value is lessened at least to the extent of $240 ; but it is gravely suggested that " such a damnum is not necessarily an injuria," and hence plaintiff is remediless. That principle has no application to the class of cases to which this belongs. To hold that it has, would defeat one of the objects of the constitutional mandate in question, and virtually overrule several well considered cases. We do not propose to do either.'

" The referee was asked, however, in this case to hold that no damages were recoverable, because the change of grade was made to enable sewers to be laid through the territory adjacent to Gunner's run, which would relieve the district from the noisome influences which have prevailed ever since population had increased. The referee does not find any warrant in the authorities for the defence.

"In Plan 166, 143 Pa. 414, Mr. Justice MITCHELL, in reviewing the legislation controlling rights of action for changes of grade, recognizes that the drainage problem is one of the principal factors included in changes of grade. 'Among these evils, not the least was the necessity for a uniform system of streets, street-grades, sewers, etc., for a population already approximating half a million, located on a site where the general level was so little above tide water as to make the problem of drainage one of difficulty as well as importance.'

"Our knowledge of the moving cause for change of grade in a very large proportion of instances is that the change is made to enable the laying of sewers which will carry off the increasing drainage of neighborhoods where the population is becoming more dense. The fact that the need in the vicinity of Gunner's run was greater than in some other places does not change the rule.

"It was further contended on the part of the city that the removal of the noisome influences from this district by the completion of the improvements covered by the report of the committee of councils would eventually enhance the value of all property within these limits. This may be true, but the city is not entitled to set off against the special damage done to this particular property a subsequent increase of value, common to the entire neighborhood. The measure of damage is the difference in the market value of the lot consequent upon the change of grade.

"The attention of the referee was also called to the line of cases of which Fertilizing Co. *v.* Hyde Park, 97 U. S. 659, is a leading example. In that case an ordinance of the village of Hyde Park prohibited the conveyance of any offal or offensive matter through the village. The effect of the ordinance was to close the business of the plaintiff. It was held that the company had no right to recover damages for the destruction of a business which was a nuisance, through the exercise of the police power of the state.

"There is no analogy between the case thus cited and that before the court. The plaintiff is seeking to recover damages for an injury, the right to payment of which is guaranteed by the constitution and provision for which is made by statute. No such element existed in the Hyde Park case or in the cases

of similar character. The referee would, therefore, report that the plaintiff is entitled to judgment for the amount of damages shown, to wit, the sum of $1,221. All of which is respectfully submitted."

Exceptions to the referee's report, alleging error (1) in refusing to affirm the point in brackets, and (2) in allowing damages, were dismissed by the court, and judgment entered for plaintiff for $1,221.

*Errors assigned* were (1, 2) dismissal of exceptions; (3) entry of judgment; quoting them respectively.

*E. Spencer Miller*, assistant city solicitor, *Chas. F. Warwick*, city solicitor, with him, for appellant, cited: Bentz v. Armstrong, 8 W. & S. 40; Broomall v. Chester, 1 W. N. 228; Fertilizing Co. v. Hyde Park, 97 U. S. 659; Green v. Swift, 47 Cal. 536; R. R. v. Richmond, 26 Gratt. 102, 103; s. c. on Appeal, 96 U. S. 521; Com. v. Alger, 7 Cush. 85, 86; Beer Co. v. Mass., 97 U. S. 33; Stuyvesant v. N. Y., 7 Cow. 58; Church v. City, 5 Cow. 541; Dil. Mun. Corp., § 141; Donnelly v. Decker, 58 Wis. 461; Cooley, Const. Lim. 732; Nickerson v. Boston, 131 Mass. 306; Cheesebrough's Petition, 78 N. Y. 238; Hagar v. Reclamation Districts, 111 U. S. 701; Shrunk v. Navigation Co., 14 S. & R. 71; R. R. v. Lippincott, 116 Pa. 472; R. R. v. Marchant, 119 Pa. 541.

*Augustus J. Rudderow*, for appellee, cited: Phila. v. Scott, 81 Pa. 85; O'Brien v. City, 150 Pa. 589.

PER CURIAM, Jan. 21, 1895:

The facts of this case are clearly set forth in the report of the learned referee, and all that need be said as to the law applicable thereto will be found in his opinion. There is nothing in the case that requires further comment. There was no error in dismissing the exceptions and entering judgment for the damages found in favor of the appellee.

The judgment is affirmed on the clear and convincing opinion of the referee.